**Hyde & Swigart**
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH IBEY, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**WAL-MART STORES, INC.,**<br><br>Defendant. | Case No.: **'13CV0502 GPC RBB**<br><br>**CLASS ACTION**<br><br>**Complaint for Damages and Injunctive Relief Pursuant To The Telephone Consumer Protection Act, 47 U.S.C § 227 et seq.**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. ELIZABETH IBEY ("Plaintiff"), brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of WAL-MART STORES, INC. ("Defendant" or "Wal-Mart"), in negligently and/or intentionally contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call..." *Id.* at §§ 12-13. *See*

*also*, *Mims*, 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

6. The Ninth Circuit recently affirmed certification of a TCPA class action remarkably similar to this one in *Meyer v. Portfolio Recovery Associates, LLC*, __ F.3d__, 2012 WL 4840814 (9th Cir. Oct. 12, 2012).

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. § 1391(b) because Plaintiff resides in the State of California, the harm to Plaintiff occurred in the State of California, and Defendant is subject to personal jurisdiction in the County of San Diego and within this judicial district because it conducts business there.

## PARTIES

9. Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

10. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein was, a corporation whose primary corporate address is in Delaware. Defendant, is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (10). Wal-Mart is a national retailer of consumer products. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of San Diego, and within this judicial district.

## FACTUAL ALLEGATIONS

11. At all times relevant, Plaintiff was a citizen of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

12. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153 (10).

13. At all times relevant Defendant conducted business in the State of California and in the County of San Diego, and within this judicial district.

14. On or about January 4, 2013, Plaintiff visited the website for Wal-Mart at www.walmart.com. Plaintiff selected a "site to store" product and added it to the online cart for purchasing.

15. Plaintiff initiated the checkout process and chose the option to "Continue as Guest" rather than set up an online account. As part of the checkout process, Plaintiff entered Plaintiff's cellular telephone number in the "optional" field for "Mobile Phone Number." Under the mobile telephone number field is the notification stating, "We'll send you a free text message when the order is ready."

16. Plaintiff finalized the online purchase after entering other identifying information.

17. Subsequently, on or about January 4, 2013, at approximately 11:04 a.m. (PST), Defendant sent a text message using short message script ("SMS")

63257 to Plaintiff's cellular telephone regarding the recent online purchase.

18. On or about January 4, 2013, at approximately 12:36 p.m. (PST), Defendant sent a second text message using SMS 63257 to Plaintiff's cellular telephone regarding the recent online purchase, indicating that the purchased item was available to be picked up.

19. On or about January 4, 2013, at approximately 6:34 p.m. (PST), Plaintiff responded to Defendant's second text message notification by replying "STOP".

20. On or about January 4, 2013, at approximately 6:35 p.m. (PST), in response to receiving this "STOP" message, Defendant then sent a text message to Plaintiff's cellular telephone (i.e., the first confirmatory text message), which read:

> FREE MSG: WALMART All Order Pickup Alerts now turned off. You will not receive any additional alerts. Visit Walmart.com to turn alerts back on.

21. Within 10 minutes of receiving the first confirmatory text message, at approximately 6:42 p.m., Defendant then sent Plaintiff a second confirmatory text message nearly identical to the first confirmatory text message concerning the same opt-out request. This second confirmatory text message read:

> FREE MSG WALMART All Order Pickup Alerts now turned off. You will not receive any additional alerts. Visit Walmart.com to turn alerts back on.

22. This second confirmatory text message (i.e., the "unsolicited SPAM confirmatory text message"), which contained a link to the main web page for Defendant's website, was unsolicited by Plaintiff.

23. This second confirmatory text message to Plaintiff's cellular telephone was placed via an "automatic telephone dialing system" ("ATDS"), as defined by

47 U.S.C. § 227 (a)(1), as prohibited by 47 U.S.C. § 227 (b)(1)(A), using SMS 63257, which is the SMS assigned to Defendant.

24. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

25. The telephone number that Defendant, or its agent called was assigned to a cellular telephone service for which Plaintiff incurs a charge for each incoming call and text message pursuant to 47 U.S.C. § 227 (b)(1).

26. This unsolicited SPAM confirmatory text message constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

27. Plaintiff did not provide Defendant or its agent prior express consent to receive this unsolicited SPAM confirmatory text message (i.e., the second confirmatory text message), pursuant to 47 U.S.C. § 227 (b)(1)(A). By the time Defendant sent the unsolicited SPAM confirmatory text message, Plaintiff had already opted out of receiving further text messages from Defendant, and Defendant had already sent a text message confirming Plaintiff's opt out request by means of ATDS.

28. This unsolicited SPAM confirmatory text message was sent by Wal-Mart, or its agent, in violation of 47 U.S.C. § 227(b)(1). To dispel any confusion regarding the violation alleged in this Complaint, Plaintiff alleges that only the second confirmatory text message alleged in Paragraph 21 violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated (the "Class").

30. Plaintiff represents and is a members of the Class, which includes all persons within the United States who sent a reply text message, "STOP," or something similar, to Defendant in response to a text message sent by Defendant, and then received two consecutive confirmatory text messages

from Defendant, within the four years prior to the filing of this action.

31. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the members of the Class number in the tens of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

32. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the members of the Class via their cellular telephones by using an unsolicited SPAM confirmatory text message, which was the second of two consecutive confirmatory text messages sent by Defendant, thereby causing Plaintiff and the members of the Class to incur certain cellular telephone charges or reduced cellular telephone time for which Plaintiff and the members of the Class previously paid, and invading the privacy of said Plaintiff and members of the Class. Plaintiff and the members of the Class were damaged thereby.

33. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand or modify the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

34. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendant's records or Defendant's agents' records, especially since members of the Class provided their contact information to Defendant in order to make a site to store purchase online and Defendant sent Class members an email confirming

their online purchase.

35. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual members of the Class, including but not limited to the following:

   a. Whether, within the four years prior to the filing of this Complaint, Defendant placed any unsolicited confirmatory text message/s, after having already placed a confirmatory text message/s concerning a single opt-out request, to a member of the Class using any automatic telephone dialing and/or texting system to any telephone number assigned to a cellular telephone service;

   b. Whether the unsolicited confirmatory text message (i.e., the second SPAM confirmatory text message) was sent knowingly or negligently by Defendant;

   c. Whether Plaintiff and members of the Class were damaged thereby, and the extent of damages for such violation; and

   d. Whether Defendant should be enjoined from engaging in such conduct in the future.

36. As a person who received a second confirmatory text message (i.e., the unsolicited SPAM confirmatory text message) without prior express consent, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

37. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Plaintiff and members of the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such

illegal conduct. Because of the size of the individual claims of members of the Class, few, if any, members of the Class could afford to seek legal redress for the wrongs complained of herein.

38. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

39. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

40. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

## NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227 ET SEQ.

41. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

42. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

43. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

///

44. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE

## TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. § 227 ET SEQ.

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

47. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

48. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and the members of the Class the following relief against Defendant:

## FIRST CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF

## THE TCPA, 47 U.S.C. § 227 ET SEQ.

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each member of the Class $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227 ET SEQ.**

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each member of the Class $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).
- Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.
- Any other relief the Court may deem just and proper.

**TRIAL BY JURY**

49. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: February 25, 2013                     Respectfully submitted,

                                             **HYDE & SWIGART**

                                             By: __/s/ Joshua B. Swigart__
                                                 JOSHUA B. SWIGART, ESQ.
                                                 ATTORNEY FOR PLAINTIFF